## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FRONT RANGE EQUINE RESCUE,,**
*et al.*

       Plaintiffs,

    vs.                                      No. 1:13-CV-00639-MCA-RHS

**TOM VILSACK, Secretary U.S.**
**Department of Agriculture,** *et al.*

       Defendants.

## ORDER

**THIS MATTER** is before the Court on Plaintiffs' *Notice of Motion and Motion for Temporary Restraining Order and Preliminary Injunction; Memorandum of Points and Authorities in Support Thereof* [Doc. 5]. Having considered the submissions, the relevant case law, the oral argument of the parties, and otherwise being fully advised in the premises, the Court grants Plaintiffs' motion in part, in that it grants Plaintiffs' motion for a temporary restraining order.

The decision to grant a temporary restraining order is within the Court's discretion. See Winnebago Tribe of Nebraska v. Stovall, 341 F.3d 1202, 1205 (10th Cir. 2003). To obtain a temporary restraining order "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." Attorney Gen. of Oklahoma v.

Tyson Foods, Inc., 565 F.3d 769, 776 (10th Cir. 2009) (internal quotation marks and citation omitted).

The Court will first address the likelihood of success on the merits of Plaintiffs' APA and NEPA claims challenging the grants of inspection and FSIS Directive 6130.1. In this case, Plaintiffs' challenge agency action under the APA.  Under the APA, the Court reviews final agency action to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). Although the Court's review must be thorough, the standard of review is very deferential to the agency.  Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Engineers, 702 F.3d 1156, 1165 (10th Cir. 2012)

Beginning with FSIS Directive 6130.1, the Court concludes that the Directive constitutes final agency action as defined by the APA.  The Directive appears to be FSIS's final statement regarding drug residue testing in equines.  Additionally, the Directive is agency action from which rights and obligation are determined and legal consequences flow, since FSIS relied on the Directive in issuing the grants of inspection to Valley Meat and Responsible Transportation.  Moreover, violations of the residue testing standards may result in a regulatory enforcement action.

The Court also concludes that the Directive is a legally relevant cause of Plaintiffs' alleged environmental harm.  FSIS adopted the Directive in response to concerns regarding the potential presence in slaughtered horses of chemical residues from drugs not previously approved for use in food animals.  FSIS specifically incorporated the

Directive into each grant of inspection and the Court is not persuaded that the Directive played no role or that it plays an insignificant role in the agency's decision to issue the grants of inspection.  FSIS issued the grants of inspection to Valley Meat and Responsible Transportation, in relevant part, because it concluded that the Directive was sufficient to protect the public health and safety from the dangers posed by these drugs.  Therefore, the Court finds that the evidence of causation is sufficient.

The Court next addresses whether the Directive constitutes "major Federal actions significantly affecting the quality of the human environment" under NEPA.  Under 40 C.F.R. § 1508(b)(2) "major federal action" includes the "[a]doption of formal plans . . . upon which future agency action will be based."  See Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 73 (2004) (holding that the approval of a land use plan promulgated by the Bureau of land management constitutes "major federal action" under NEPA).  FSIS Directive 6130.1 appears to be a formal plan or policy regarding drug residue testing in equines.  Additionally, future agency action will be and indeed was based on the Directive.  As previously explained, the grants of inspection were based, in relevant part, on the existence of FSIS Directive 6130.1 and future drug residue testing of equines at Valley Meat and Responsible Transportation will be based on the standards set forth in the policy.

There is no evidence in the record that FSIS relied on the categorical exclusion in adopting FSIS Directive 6130.1.  Our Tenth Circuit has held that "categorical exclusions cannot be summoned as *post-hoc* justifications for an agency's decision."  Utah Envtl.

<u>Congress v. Russell</u>, 518 F.3d 817, 825 n.4 (10th Cir. 2008).  Accordingly, the categorical exclusion is inapplicable to the Directive.

Based on the foregoing, the Court concludes that Plaintiffs have established a substantial likelihood of success on the merits of their APA and NEPA claim challenging Directive 6130.1.

Turning to the grants of inspection, as previously stated, the grants of inspection were based, in relevant part, on the existence of the FSIS Directive to protect the public health and safety.  The Court is not persuaded that the grants of inspection would have been issued in the absence of this Directive, the express purpose of which was to protect the public health and safety from the unique chemical residues possibly present in equines.  Although the Court must afford deference to the FSIS's actions, the Court does not find credible the Federal Defendants' assertions that the grants of inspection would have been issued in the absence of the Directive given the express purpose of the Directive to protect the public health and safety and given the fact that FSIS specifically incorporated the Directive into their grants of inspection.  The Court therefore concludes that Plaintiffs have established a substantial likelihood of success on the merits of their NEPA and APA claims challenging the grants of inspection.

Having determined that Plaintiffs have established a substantial likelihood of success on the merits of their claims, the Court next addresses the issue of irreparable harm.  The Court acknowledges the concerns expressed in the pleadings and oral argument as to the welfare of horses, but the Court nonetheless must emphasize that

NEPA is a statute that protects the physical environment and, therefore, the harm with which we are concerned is the risk of harm to the physical environment.  Plaintiffs must establish that irreparable harm to the physical environment is *likely* in the absence of a temporary restraining order.  See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008).  "Purely speculative harm will not suffice, but [a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied this burden."  Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1157 (10th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiffs have submitted evidence of environmental harm at commercial horse slaughter facilities that operated in the United States prior to the defunding of inspectors in fiscal year 2006.  [See. Doc. 13]  This environmental harm included blood spills, improper disposal of animal parts and carcasses, noxious odors, and the leeching of horse effluent into the local water supply and waterways.  [Id.]  These harms are compounded by the presence of chemical residues in equines that are not otherwise present in other amenable species subject to slaughter.  Evidence has been proffered that a majority of horses subject to slaughter are administered a variety of pharmaceutical drugs not approved for use in food animals, the effects of which could adversely effect the physical environment.  The Court concludes that Plaintiffs have fulfilled their burden to prove that environmental harm is likely to occur in the absence of the issuance of a temporary restraining order.

Turning to the balance of the harms, the Court recognizes that Valley Meat and Responsible Transportation will suffer significant economic harm if they are prohibited from operating during the pendency of the present litigation.  However, the Court concludes that the environmental harms posed by commercial horse slaughter without adequate NEPA review outweigh the legitimately incurred costs to defendants resulting from a temporary restraining order.

Finally, the Court concludes that the issuance of a temporary restraining order is not adverse to the public interest.  "[T]he public has an undeniable interest in the [government's] compliance with NEPA's environmental review requirements and in the informed decision-making that NEPA is designed to promote."  <u>Colorado Wild Inc. v. U.S. Forest Service</u>, 523 F.Supp.2d 1213, 1223 (D. Colo. 2007).  The Court recognizes that the public also has an interest in the enforcement of the Federal Meat Inspection Act and its implementing regulations, but concludes that this interest is outweighed by the risk of environmental harms posed by the commencement of commercial horse slaughter in the absence of NEPA review.

For the foregoing reasons, the Court concludes that Plaintiffs are entitled to a temporary restraining order as follows:

**IT IS THEREFORE ORDERED** that Plaintiffs' *Notice of Motion and Motion for Temporary Restraining Order and Preliminary Injunction; Memorandum of Points and Authorities in Support Thereof* [Doc. 5] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the Federal Defendants are enjoined from

dispatching inspectors to the horse slaughterhouse facilities operated by Intervenor-Defendants Valley Meat and Responsible Transportation until further order of the Court.

**IT IS FURTHER ORDERED** that the Federal Defendants are ordered to suspend or withhold the provision of meat inspection services to Valley Meat and Responsible Transportation until further order of the Court.

**IT IS FURTHER ORDERED** that Defendants Valley Meat and Responsible Transportation are enjoined from commercial horse slaughter operations until further order of the Court.

**IT IS FURTHER ORDERED** that the Court will set a hearing on Plaintiffs' request for a preliminary injunction within thirty (30) days.

**IT IS FURTHER ORDERED** that the Court will direct the Federal Defendants to expedite the production of the full administrative record.

**IT IS FURTHER ORDERED** that the matter of a security bond under Fed. R. Civ. P. 65(c) is hereby referred to the Honorable Robert Hayes Scott, United States Magistrate Judge, and Judge Scott is requested to convene a hearing (telephonic or otherwise) with the parties on Monday, August 5, 2013, to address this matter.

**SO ORDERED** this 2nd day of August, 2013, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge