**John W. Ogan**
**Adam T. Adkin**
Karnopp Petersen LLP
1201 NW Wall Street, Suite 200
Bend, Oregon 97701
541-382-3011 Telephone
541-388-5410 Facsimile
jwo@karnopp.com
ata@karnopp.com
*Counsel for Amicus Curiae Applicant*
*The Confederated Tribes of the Warm Springs Reservation of Oregon*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**FRONT RANGE EQUINE RESCUE,** *et al.*
   Plaintiffs,
 and

**STATE OF NEW MEXICO**

   Plaintiff-Intervenor
 v.

**TOM VILSACK, Secretary U.S.**
**Department of Agriculture,** *et al.*

   Defendants,

 and
**VALLEY MEAT COMPANY, LLC,** *et al.*

   Defendant-Intervenors.

Case No. 1:13-cv-00639-MCA-RHS

**MEMORANDUM IN SUPPORT OF THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON'S MOTION FOR LEAVE TO APPEAR AS** *AMICUS CURIAE*

The Confederated Tribes of the Warm Springs Reservation of Oregon ("Warm Springs Tribe") is a sovereign governmental and corporate entity that is the legal and political successor in interest to the seven tribes and bands that were signatories to the Treaty with the Tribes of Middle Oregon of June 25, 1855, 12 Stat. 963.

The Warm Spring Tribe has been acutely affected by the *de facto* ban on the processing of horsemeat for human consumption.  Through its experiences living with a horse population that has grown beyond the bounds of what the Warm Springs Tribe Reservation is able to support and the tribe's efforts to deal with that population, the Warm Springs Tribe has amassed information about the effect that the *de facto* ban on processing horsemeat for human consumption has caused.  Consequently, the Warm Springs Tribe requests that the court permit the tribe to appear as *amicus curiae* to share its unique perspective and information with the court, thereby aiding the court to better understand the issue before it.

The Court's August 29, 2013 scheduling order provides that, consistently with *Olenhouse v. Commodity Credit Corp.*, 42 F3d 1560, 1580 (10th Cir 1984), the Court will process the Plaintiffs' First Amended Complaint as an appeal.  *Olenhouse* provides that, when the district court acts as an appellate court, it should govern itself by referring to the Federal Rules of Appellate Procedure.  *Id.*  Pursuant to Fed. R. App. P. 29, the Warm Springs Tribe moves the court for leave to appear as *amicus curiae* and file a brief in support of the position of the defendants and defendant-intervenors.  No person other than the Warm Springs Tribe has contributed or will contribute money to fund the Warm Springs Tribe's appearance as *amicus curiae*.

**I.       The Warm Springs Tribe is Well Informed about the Effects that have Resulted from the Ban on Inspections of Facilities that Process Horsemeat for Human Consumption**

The experience of the Warm Springs Tribe with a feral horse population that has significantly increased in size following the *de facto* ban on processing horsemeat for human consumption has given the tribe a perspective and a fount of information that would be valuable to the court.  The Warm Springs Tribe has conducted studies that detail the environmental condition of the tribe's reservation lands.  One study concluded that the forage resources of the Warm Springs Tribe Reservation have been severely degraded over the last 70 years and that the primary cause of that degradation has been unregulated grazing on the reservation.  Smith Declaration ¶ 6.  As a result of the degradation, the majority of the rangeland on the reservation is now in poor or very poor condition.  Smith Declaration ¶ 6.  Most of the rangeland has passed ecological thresholds, and continued overgrazing is projected to lead to significant amounts of soil loss and other soil changes that will create a barren landscape within the reservation.  Smith Declaration ¶ 6.

In order to bring the reservation rangelands and associated watersheds back from its dire environmental condition, concerted management efforts need to be implemented to conserve and protect resources.  Smith Declaration ¶ 7.  One of the major recommendations in doing so is to control grazing on the reservation.  Smith Declaration ¶ 7.  Controlling the grazing of the feral horse population has consistently been a struggle for the Warm Springs Tribe, but the increase in the feral horse population following the *de facto* ban has made it nearly impossible to control feral-horse grazing.  Smith Declaration ¶ 12.

The Warm Springs Tribe has recognized for many years that the feral horse population on the reservation contributes significantly to the degradation of the reservation's rangeland, and the tribe has actively pursued options for controlling the size of the feral horse population. Smith Declaration ¶ 8, 9. Prior to the *de facto* ban, shipping horses to be processed for human consumption was an option that the tribe used in its management efforts. Smith Declaration ¶ 10.

When the *de facto* ban on horsemeat processing for human consumption occurred, the tribe undertook a concerted effort to consider the economics of alternative means of thinning the feral horse population. The tribe conducted a feasibility study concerning the possibilities of operating a horsemeat processing facility on the reservation for either human or non-human consumption; operating a rendering facility on the reservation; and conducting a euthanasia program that would dispose of the horse carcasses without processing them. Smith Declaration ¶ 10. The economics of those alternatives have limited the tribe's ability to thin its feral horse herd, and the absence of an economically feasible means for thinning the herd has resulted in a drastic increase in the number of feral horses on the reservation. Smith Declaration ¶ 11. The Warm Springs Tribe has experienced and projects even further endangerment of its already fragile rangeland, and a noticeable decrease in the health of the horses within the reservation has been documented. Smith Declaration ¶ 12.

Thus, the tribe not only understands the environmental impacts that the *de facto* ban on horsemeat processing for human consumption has caused but also understands the economic costs of alternatives for managing feral horse populations. The Warm Springs Tribe's knowledge in those areas would provide the court with a more complete

understanding of the circumstances and effects that the decision in this case will have. Therefore, the court should allow the Warm Springs Tribe to appear as *amicus curiae*.

II.     **No Other Party to the Litigation is Capable of Representing the Warm Springs Tribe's Interest in the Case**

The Warm Springs Tribe is a sovereign nation and has its own unique history and cultural tradition. The tribe is entitled to its own voice and respectfully requests that the court recognize that no other entity, including the United States government or any other tribe, could possibly represent tribe's interests or speak on behalf of the Warm Springs Tribe.

Furthermore, although the Warm Springs Tribe and the Yakama Nation have both experienced the degradation caused by the overpopulation of feral horses, the environments of each reservation and the horse populations on those reservations are different. Furthermore, the management objectives of the Warm Springs Tribe and the Yakama Nation differ. Consequently, the Warm Springs Tribe has experience with horse overpopulation that is distinct from the experiences that the Yakama Nation will share with the court.

Finally, the Warm Springs Tribe has been strongly invested in investigating options for managing its horse population. The tribe's investigations have provided it with an informed perspective about the economics of managing feral horse populations. What happens to off-reservation processing facilities has the potential to seriously impact the tribe's efforts to manage its feral horse population, and, if permitted to appear as *amicus curiae*, the Warm Springs Tribe will be able to provide the court with information that the other parties are unlikely to produce.

## CONCLUSION

The Warm Springs Tribe seeks *amicus curiae* status so that the tribe may file briefs and make such evidentiary presentations as are allowed by the court in support of the position of the Defendants and the Defendant-Intervenors.  The tribe has been uniquely affected by the *de facto* ban on the processing of horsemeat for human consumption and has a significant interest in ensuring that the court be as well-informed as possible before making any decision in this case.  Our request to participate as *amicus curiae* is timely and will not prejudice any party to this case.  Pursuant to Fed. R. App. P. 29, we respectfully request that the court grant the Warm Springs Tribe's motion to appear as *amicus curiae*.

DATED this 6th day of September, 2013.

Respectfully submitted,

| | |
|---|---|
| /s/ John Ogan | |
| John W. Ogan, OSB# 065940 | Lee Bergen, NM Bar No. 5062 |
| Adam T. Adkin, OSB# 113090 | Bergen Law Offices LLC |
| Karnopp Petersen LLP | 4110 Wolcott Ave NE, Suite A |
| 1201 NW Wall Street, #200 | Albuquerque, NM 87109-4523 |
| Bend, Oregon 97701 | Local Counsel for *Amicus Curiae* |
| Counsel for *Amicus Curiae* Applicant | Applicant The Confederated Tribes of the |
| The Confederated Tribes of the Warm | Warm Springs Reservation of Oregon |
| Springs Reservation of Oregon | |

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on September 6, 2013, using the ECF System which will send notification to all parties of record.

/ s/ John Ogan
John W. Ogan, OSB# 065940
Adam T. Adkin, OSB# 113090
Karnopp Petersen LLP
1201 NW Wall Street, #200
Bend, Oregon 97701
Counsel for *Amicus Curiae* Applicant
The Confederated Tribes of the Warm
Springs Reservation of Oregon

W904.0/600674.doc