**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FRONT RANGE EQUINE RESCUE *et al.*,

       Plaintiffs,

       v.                                                Civ. No. 13-639 MCA/KK

TOM VILSACK *et al.*,

       Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Intervenor-Defendant Responsible Transportation, L.L.C.'s Motion to Recover Injunction Bond (Doc. 213), filed February 18, 2014, and Intervenor-Defendant Valley Meat Company, L.L.C.'s Motion to Recover Rule 65(c) Security Bond (Doc. 215), filed February 25, 2014.  By an Order of Reference filed September 14, 2015 (Doc. 253), the presiding judge referred these two motions to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the motions.  The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, concludes that the motions are not well taken, and recommends that they be DENIED.

**I.  Introduction**

This case involves the grant of federal meat inspection services to Intervenor-Defendants Valley Meat Company, L.L.C. ("Valley Meat"), and Responsible Transportation, L.L.C. ("Responsible Transportation") for commercial horse slaughter.[1]  Defendants Vilsack and Hagen

---

[1] After this lawsuit was filed, the federal government determined that a third Intervenor-Defendant, Rains Natural Meats ("Rains"), also "met all [federal] statutory and regulatory requirements for a grant of inspection for the slaughter of horses."  (Doc. 154 at 1.)  Rains concurred in the motions presently before the Court, but filed no pleadings in support of its position.  (Doc. 213 at 1; Doc. 215 at 1 n.1.)

are the Secretary and Undersecretary for Food Safety, respectively, of the United States Department of Agriculture ("USDA").  (Doc. 54 at 23 ¶¶ 89-90.)  Defendant Almanza is the Administrator of the USDA's Food Safety Inspection Service ("FSIS"), the agency responsible for issuing grants of inspection to commercial slaughterhouses.  (*Id.* at 23 ¶ 91.)  For businesses such as Valley Meat and Responsible Transportation to engage in the commercial slaughter of horses for human consumption, the FSIS must issue a grant of inspection to them.[2]

Plaintiffs are various non-profit organizations and individuals opposed to the issuance of grants of inspection to commercial horse slaughterhouses.  (*Id.* at 4-22 ¶¶ 12-85.)  In their First Amended Complaint, Plaintiffs asked the Court to:  (1) declare that the FSIS' grants of inspection to commercial horse slaughterhouses, and its adoption of a drug residue testing plan for commercial horse slaughter, violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; (2) set aside any grants of inspection the FSIS issued to commercial horse slaughterhouses; and, (3) permanently enjoin Defendants Vilsack, Hagen, and Almanza ("Federal Defendants") from issuing any other grants of inspection to such facilities without "an adequate NEPA review." (Doc. 54 at 39-40.)

## II.  Factual Background and Procedural History

From 2006 through 2011, the United States Congress prohibited the use of federal funds to "pay the salaries or expenses of personnel to inspect horses under . . . the [FMIA]."  (Pub. L. No. 109-97, § 794 (2005); Pub. L. No. 110-161, § 741 (2007); Pub. L. No. 111-80, § 744 (2009).)  As a consequence, horse slaughter in the United States ceased during those years.

---

[2] The Federal Meat Inspection Act ("FMIA") prohibits the slaughter of "horses, mules, or other equines . . . which are capable of use as human food at any establishment preparing any such article for commerce, except in compliance with the requirements of this chapter," including FSIS inspections.  21 U.S.C. § 610(a).

*Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 567 (10th Cir. 2015).  However, Congress omitted this funding prohibition for fiscal years 2012 and 2013, making federal funding available to pay horse slaughter inspectors and allowing commercial horse slaughtering to be carried out lawfully in the United States.  *Id.*  Valley Meat, a slaughterhouse in Roswell, New Mexico, submitted an amended application for a grant of inspection for commercial equine slaughter on March 2, 2012, which the FSIS granted on June 28, 2013.  (Doc. 66-2 at 2; Doc. 85 (Provisional Administrative Record ("PAR") at 3-4).)  Responsible Transportation, a business in Sigourney, Iowa, likewise filed an application for a grant of inspection for equine slaughter on December 13, 2012, which the FSIS granted on July 1, 2013.  (Doc. 22-5 at 3; Doc. 85 (PAR at 4-2).)

On July 2, 2013, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against the Federal Defendants in the United States District Court for the Northern District of California. (Doc. 1.)  On the same date, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction, seeking to enjoin the Federal Defendants "from authorizing horse slaughter at a domestic horse slaughter facility pending consideration of the merits of Plaintiffs' claims."  (Doc. 16-1 at 37.)  By stipulation, the case was transferred from the Northern District of California to the District of New Mexico on July 10, 2013.  (Doc. 31.)  Valley Meat filed a motion to intervene in this matter on July 8, 2013, which the Court granted on July 16, 2013. (Docs. 24, 43.)  Responsible Transportation, in turn, filed a motion to intervene on July 19, 2013, which the Court granted on July 31, 2013.[3]  (Doc. 47, 90.)  Also on July 19, 2013, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief.  (Doc. 54.)  The First Amended Complaint added several new Plaintiffs, but otherwise mirrored Plaintiffs' original

---

[3] The Court also permitted numerous other interested parties to intervene in this matter; however, the motions presently before the undersigned do not affect these other intervenors' interests.  (*See* Docs. 90, 140.)

complaint.  (*See* Docs. 1, 54.)  Like the original complaint, it did not assert any claims against, or seek any relief from, Valley Meat or Responsible Transportation.  (*Id.*)

The Court issued a temporary restraining order ("TRO") after a hearing on August 2, 2013.  (Doc. 94.)  In the TRO, as Plaintiffs had requested, the Court restrained the Federal Defendants from sending inspectors to the horse slaughterhouses of, or otherwise providing meat inspection services to, Valley Meat and Responsible Transportation.[4]  (Doc. 94 at 6-7.)  In addition, *sua sponte*, the Court directly restrained Valley Meat and Responsible Transportation from engaging in commercial horse slaughter.  (*Id.* at 7.)  Finally, the Court referred "the matter of a security bond under Fed. R. Civ. P. 65(c)" to United States Magistrate Judge Scott.  (*Id.*)  After a hearing on August 8, 2013, Judge Scott ordered Plaintiffs to post injunction bonds of $435,000 for Valley Meat and $60,000 for Responsible Transportation, "for the time period August 5, 2013 through September 1, 2013."[5]  (Doc. 102 at 2.)

Six days later, on August 14, 2013, Plaintiffs filed a Motion to Modify the Temporary Restraining Order and Objection to Magistrate's Order Requiring Injunction Bond, with a Request for Expedited Review ("Motion to Modify and Objection").  (Doc. 112.)  In the Motion to Modify and Objection, Plaintiffs asked the Court to modify the TRO to "[c]larify that the Federal Defendants [a]re the [o]nly [e]njoined [p]arties . . . [b]ecause Plaintiffs only sued the federal defendants under the APA and only sought in their Complaint to obtain relief from the federal defendants."  (*Id.* at 9.)  Plaintiffs also objected to Judge Scott's order requiring them to post injunction bonds, arguing that they should have been required to post no more than a

---

[4] On August 21, 2013, the Court amended the TRO to clarify that the Federal Defendants were to suspend only *horse* meat inspection services to Valley Meat and Responsible Transportation.  (Doc. 125 at 1, 7.)

[5] On September 20, 2013, the Court also restrained the Federal Defendants from sending inspectors to the horse slaughterhouse of, or otherwise providing horse meat inspection services to, Rains, but did not directly restrain Rains from engaging in commercial horse slaughter.  (Doc. 168 at 2.)  Judge Scott subsequently denied Rains' motion for an order requiring Plaintiffs to post an injunction bond in its favor.  (Doc. 199 at 2.)

nominal bond, because: (1) they sought to "vindicate the public interest served by NEPA"; and, (2) the bond amounts were "based on the entirely speculative projected business losses of two entities that have never even been in the business of slaughtering horses . . . and thus have no record of profits." (*Id.* at 11, 13.) However, on August 16, 2013, Plaintiffs posted the injunction bonds as ordered, "to ensure the Court has the opportunity to review [the] motion [and objection] and issue an order addressing it." (*Id.* at 13 n.5; Docs. 115-16.)

Valley Meat and Responsible Transportation opposed Plaintiffs' Motion to Modify and Objection, and argued that: (1) the Court properly included Valley Meat and Responsible Transportation in its TRO; (2) Plaintiffs had ample resources to post the required bonds; (3) Valley Meat and Responsible Transportation produced non-speculative evidence to support the bond amounts; and, (4) if anything, the bond amounts were inadequate to compensate Valley Meat and Responsible Transportation for the losses the TRO would cause. (*See, e.g.*, Doc. 117 at 2; Doc. 121 at 3, 5, 8.) The TRO expired on October 31, 2013, (Doc. 142), before the Court had an opportunity to rule on Plaintiff's Motion to Modify and Objection.[6]

On November 1, 2013, the Court issued a Memorandum Opinion and Order denying Plaintiffs' request for declaratory and permanent injunctive relief, and dismissing the action with prejudice. (Doc. 205.) Plaintiffs immediately appealed this decision to the United States Court of Appeals for the Tenth Circuit. (Doc. 206.) On November 4, 2013, the Tenth Circuit temporarily enjoined the Federal Defendants from sending inspectors to the horse slaughterhouses of, or otherwise providing horse meat inspection services to, Valley Meat, Responsible Transportation, and Rains. (Doc. 208 at 3.) The Tenth Circuit did not directly

---

[6] The civil docket attests to how diligently and efficiently the Court handled this case, resolving it on the merits within four months of its having been filed. This feat is all the more remarkable in light of the 204 pleadings—an average of 1.7 *every day*—filed in the case in that time frame. These challenging circumstances would have forced the Court to decide how best to allocate limited judicial resources to the benefit of all parties, and impelled the Court to resolve the merits of Plaintiffs' claims before the Motion to Modify and Objection could be reached.

enjoin these slaughterhouses from operating, and did not require Plaintiffs to post a bond.  (*Id.*)
On December 13, 2013, the Tenth Circuit denied Plaintiffs' motion for an injunction pending
appeal.  (Doc. 212.)

On February 18, 2014 and February 25, 2014 respectively, Valley Meat and Responsible
Transportation filed motions to recover the injunction bonds Plaintiffs had posted.  (Docs. 213,
215.)  Valley Meat and Responsible Transportation asserted that they were entitled to recover the
bonds because the Court's November 1, 2013 Memorandum Opinion and Order ("November
2013 Order") established that the TRO wrongfully restrained them.  (Doc. 214 at 4; Doc. 216 at
5.)  Plaintiffs opposed these motions on the grounds that they were premature, because Plaintiffs'
appeal to the Tenth Circuit was still pending.  (Doc. 219 at 8.)  Plaintiffs also argued that they
were entitled to discovery and an evidentiary hearing regarding the damages that the TRO
allegedly caused Valley Meat and Responsible Transportation to suffer.  (*Id.* at 13.)  The motions
to recover the injunction bonds remained pending throughout Plaintiffs' appeal.

The Tenth Circuit dismissed Plaintiffs' appeal based on mootness in a published opinion
issued on April 3, 2015, for several reasons.  First, Congress "included a funding prohibition for
equine inspection services in its 2014 and 2015 appropriations acts," once again rendering it
unlawful to engage in the commercial slaughter of equines for human consumption.  *Front
Range Equine Rescue*, 782 F.3d at 568.  Further,

> one slaughterhouse [Valley Meat] subsequently withdrew its application for
> inspection, a second slaughterhouse [Responsible Transportation] surrendered its
> grant of equine inspection in order to obtain a grant of inspection for cattle
> slaughter, and the third slaughterhouse [Rains] failed to successfully challenge a
> state permitting decision to allow only non-equine slaughter at the facility.

*Id.* at 567.  In its opinion, the Tenth Circuit also vacated this Court's November 2013 Order,
reasoning that

> [v]acatur is generally appropriate when a case becomes moot because of happenstance or the prevailing party's unilateral action, based on the underlying equitable principle that a party should not have to bear the consequences of an adverse ruling when frustrated by the vagaries of the circumstances. The issues in this appeal were mooted by unilateral decisions made by the slaughterhouse Intervenors-[Defendants] and by various government officials, not by any action of [Plaintiffs].

*Id.* at 571.

After the Tenth Circuit mooted Plaintiffs' appeal and vacated the November 2013 Order, this Court ordered the parties to submit additional briefing regarding Valley Meat's and Responsible Transportation's motions to recover the injunction bonds. (Doc. 252.) The Court also referred the two motions to the undersigned. (Doc. 253.) Plaintiffs, Valley Meat, and Responsible Transportation submitted supplemental briefs on September 25, 2015, (Docs. 254-56), and the motions to recover the injunction bonds are now before the undersigned.

### III.  Analysis

The basic premises of Valley Meat's and Responsible Transportation's motions to recover injunction bonds are that:  (1) the Court's November 2013 Order established that the TRO wrongfully restrained Valley Meat and Responsible Transportation; (2) Valley Meat and Responsible Transportation have proven damages in excess of the injunction bonds Plaintiffs posted; and, (3) Valley Meat and Responsible Transportation are therefore entitled to recover the full amounts of the bonds.  (Docs. 213, 215.)  There are a number of legal issues subsumed within these arguments, which the Court will address in turn.

### A.    *There is no extant order establishing that Valley Meat and Responsible Transportation were wrongfully restrained.*

The Court must first consider whether its November 2013 Order, which the Tenth Circuit vacated, establishes that Valley Meat and Responsible Transportation were wrongfully restrained.  The United States Supreme Court's decision in *Camreta v. Greene*, 563 U.S. 692,

131 S. Ct. 2020 (2011), is instructive in this regard.  The *Camreta* Court noted that when a civil case becomes moot pending appeal, the Court's usual practice is to vacate the judgment below, because "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance . . . ought not in fairness be forced to acquiesce in that ruling."  131 S. Ct. at 2035 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). Critically, the Court then observed that "[t]he point of vacatur is to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by what we have called a 'preliminary' adjudication."  *Id.* (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40-41 (1950)).

The Tenth Circuit has similarly described the purpose and effect of vacatur, holding, for example, that "vacatur is appropriate to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1132 (10th Cir. 2010) (internal quotation marks omitted).  In that case, the court vacated the judgment below to prevent the appellant from "labor[ing] in the future under any legal consequences that might be spawned by the district court's . . . orders." *Id.* at 1133. Likewise, in this matter, the Tenth Circuit expressly vacated the Court's November 2013 Order because "a party should not have to bear the consequences of an adverse ruling when frustrated [from obtaining appellate review] by the vagaries of the circumstances."  *Front Range Equine Rescue*, 782 F.3d at 571 (internal quotation marks omitted).  In short, controlling law, including the law of this case, dictates that the Court's vacated November 2013 Order must spawn no legal consequences.

The November 2013 Order would certainly spawn a legal consequence if the Court were to conclude that it establishes that Valley Meat and Responsible Transportation were wrongfully

restrained.  "[T]o prevail in an action to recover on [an] injunction bond," a party "must prove that the injunction was wrongful and that he did have the right to engage in the enterprises enjoined."  *Robson v. R & R Fur Co., Inc.*, 986 F.2d 1428, 1993 WL 34680, at *2 (10th Cir. 1993) (unpublished)[7]; *see Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011) ("A party has been wrongfully enjoined if it has been ordered . . . to cease doing something it had a right to continue doing . . . in hindsight in light of the ultimate decision on the merits after a full hearing[.]")(citations and internal quotation marks omitted).  Thus, if the Court were to conclude that Valley Meat and Responsible Transportation were wrongfully restrained based on the November 2013 Order, the Order would spawn the legal consequence of satisfying an element of Valley Meat's and Responsible Transportation's claims to recover the injunction bonds.  The law regarding vacatur plainly forbids this result.

According to Responsible Transportation, the November 2013 Order establishes that it and Valley Meat were wrongfully restrained, even though the decision was vacated, because the only effect of vacatur is to deprive an order "of any preclusive effect in subsequent litigation." (Doc. 254 at 5.)  This argument actually reinforces the point previously made, that vacatur is intended to prevent a decision from spawning any legal consequences "in subsequent litigation," (*id.*) — specifically, here, in subsequent litigation regarding recovery on the injunction bonds. This litigation is no less "subsequent" because Valley Meat and Responsible Transportation filed their motions to recover the bonds prematurely, while the question of whether they were wrongfully restrained was still pending before the Tenth Circuit.  For all of the above reasons, the Court proposes to find that, due to the Tenth Circuit's vacatur, the Court's November 2013

---

[7] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

9

Order cannot and does not establish that Valley Meat and Responsible Transportation were wrongfully restrained.

The Court must next consider whether the Tenth Circuit's denial of an injunction pending appeal establishes that Valley Meat and Responsible Transportation were wrongfully restrained. (*See* Doc. 254 at 6-7; Doc. 256 at 7-11; Doc. 212.)  In its Order denying Plaintiffs' motion for an injunction pending appeal, the Tenth Circuit did determine that Plaintiffs had "failed to establish a likelihood of success on appeal."  (Doc. 212 at 7.)  However, the court was careful to note that this determination was "made without the benefit of full merits briefing and oral argument," and thus, that its "necessarily tentative conclusions d[id] not purport to constrain the ultimate resolution of this case."  (*Id.* at 3 n.1.)  As discussed above, to recover on an injunction bond, a party must prove that it did have the right to engage in the enterprise enjoined, as an ultimate decision on the merits.  *Robson*, 986 F.2d 1428, 1993 WL 34680, at *2; *Nokia Corp.*, 645 F.3d at 559.  Nothing in the Tenth Circuit's order purports to decide that Valley Meat and Responsible Transportation did, on the merits, have a right to engage in the enterprises the TRO restrained. On the contrary, the court clearly stated that its finding regarding Plaintiffs' likelihood of success was "tentative" and should *not* "constrain the ultimate resolution" of the case.  (Doc. 212 at 3 & n.1.)  Thus, the Tenth Circuit's denial of an injunction pending appeal does not establish that Valley Meat and Responsible Transportation were wrongfully restrained.

Finally, even if either this Court's November 2013 Order or the Tenth Circuit's denial of an injunction pending appeal *had* established that Valley Meat and Responsible Transportation had the right to engage in the enterprises enjoined, this still would not establish that they were wrongfully restrained, in light of Plaintiffs' Motion to Modify and Objection.  (Doc. 112.)  In the motion to modify, filed nine days after entry of the TRO, Plaintiffs asserted that Valley Meat and

Responsible Transportation should not have been included in the TRO and asked the Court to remove them from it.  (*Id.* at 11.)  Because the Court never had the opportunity to rule on this motion, whether the Court would have removed Valley Meat and Responsible Transportation from the TRO before it expired has not been decided.  Unless and until this motion can be resolved, the Court cannot find that Valley Meat and Responsible Transportation were wrongfully restrained for the purpose of recovering the injunction bonds.

**B.**     ***Considerations of equity and justice mandate denial of Valley Meat's and Responsible Transportation's Motions to Recover Injunction Bonds.***

Having determined that no extant ruling establishes that the TRO wrongfully restrained Valley Meat and Responsible Transportation, the Court's next logical step would ordinarily be to address Plaintiffs' Motion to Modify and Objection.  That step, in turn, could require the Court to take a number of other steps, including:  (1) deciding whether Valley Meat and Responsible Transportation were in fact wrongfully restrained; (2) deciding whether to permit the parties to conduct discovery on Valley Meat's and Responsible Transportation's alleged damages resulting from the TRO, and if so, setting the parameters of the discovery to be taken; (3) holding an evidentiary hearing on damages; and, (4) making an ultimate determination regarding whether Valley Meat and Responsible Transportation should be permitted to recover on the bonds in whole or in part.  However, in the unusual circumstances of this case, all of these steps except the last are unnecessary, because even if the Court ruled in Valley Meat's and Responsible Transportation's favor on the intermediate issues, the Court would nevertheless conclude that Plaintiffs should not in equity and justice be required to compensate Valley Meat and Responsible Transportation up to the amount of the injunction bonds.

Federal Rule of Civil Procedure 65 governs injunctive relief in federal civil cases.  Fed. R. Civ. P. 65.  In pertinent part, Rule 65 states that

> [t]he court may issue a preliminary injunction or a temporary restraining order
> only if the movant gives security in an amount that the court considers proper to
> pay the costs and damages sustained by any party found to have been wrongfully
> enjoined or restrained.

Fed. R. Civ. P. 65(c). "Rule 65(c) creates a cause of action for costs and damages suffered by

the enjoined party if it is later determined that the party was wrongfully enjoined or restrained."

*St. Mary of the Plains Coll. v. Higher Educ. Loan Program of Kan., Inc.*, 1989 WL 159368, at *2

(D. Kan. 1989) (internal quotation marks omitted).

In this circuit, however, "the decision whether to award damages [under Rule 65(c)], and

the extent thereof, is in the discretion of the district court and is based upon considerations of

equity and justice."  *State of Kan. ex rel. Stephan v. Adams*, 705 F.2d 1267, 1269 (10th Cir. 1983)

("*Stephan*"); *Sierra Club v. Hodel*, 848 F.2d 1068, 1097 (10th Cir. 1988), *overruled on other*

*grounds by Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970, 973 (10th Cir. 1992)

("The award of damages under [Rule] 65(c) is left to the discretion of the district court.").

> [J]ust because a bond is required by Rule 65(c), the district court is not bound to
> award damages on the bond without considering the equities of the case. . . .
> Rather, a court, in considering the matter of damages, must exercise its equity
> power and must effect justice between the parties, avoiding an inequitable result.
> . . . [A] defendant who is wrongfully enjoined will not always be made whole by
> recovery of damages.

*Stephan*, 705 F.2d at 1269-70 (citing *Page Commc'ns Eng'rs, Inc. v. Froehlke*, 475 F.2d 994,

997 (D.C. Cir. 1973) (per curiam)).[8]

Thus, the Tenth Circuit in *Sierra Club* affirmed the district court's decision not to award

---

[8] The Tenth Circuit appears to allow the trial courts somewhat broader discretion than other Circuits regarding whether to award damages to a wrongfully enjoined party under Rule 65(c).  For example, in the Second Circuit, the trial court's discretion is constrained by "the presumption that wrongfully enjoined parties are entitled to recovery against the bond," *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 137 (2d Cir. 2014), and the trial court must therefore "have a good reason to deny recovery against the bond."  *Nokia Corp.*, 645 F.3d at 559; *see also, e.g., Global NAPS, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 23 (1st Cir. 2007) (same); *State of Ala. ex rel. Siegelman v. U.S. E.P.A.*, 925 F.2d 385, 390 (11th Cir. 1991) (same); *Coyne-Delany Co. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 391-92 (7th Cir. 1983) (same).  The potential distinction is immaterial here, however, because the considerations of equity and justice that mandate denial of recovery against the injunction bonds also constitute good reasons to deny recovery.

damages under Rule 65(c) where, *inter alia*, "plaintiffs raised legitimate environmental concerns having a high public interest and litigated in good faith."  848 F.2d at 1097.  Likewise, in *Stephan*, the Tenth Circuit affirmed the district court's denial of damages under Rule 65(c) where the plaintiffs "raised valid environmental concerns" and the restraining order in question was vacated "not because the concerns on the part of plaintiffs . . . were unfounded," but rather because of "the intervention of Congress.  705 F.2d at 1270.

In the present matter, as in *Sierra Club* and *Stephan*, Plaintiffs "raised legitimate environmental concerns having a high public interest."  848 F.2d at 1097.  In their First Amended Complaint, Plaintiffs alleged that

> horse slaughter causes significant environmental harms related specifically to the means and methods of horse slaughter, the potentially toxic nature of the waste generated by this industry, and the fact that horse meat endangers consumers.

(Doc. 54 at 3 ¶ 8.)  Plaintiffs further alleged that the Federal Defendants violated NEPA by issuing grants of inspection to commercial horse slaughterhouses and establishing a drug residue testing plan for horse slaughter without sufficiently considering the environmental impact of these decisions.  (*Id.* at 38-39 ¶¶ 168-76.)  Moreover, in seeking a TRO, Plaintiffs "submitted evidence of environmental harm at commercial horse slaughter facilities that operated in the United States prior to the defunding of inspectors in fiscal year 2006."[9]  (Doc. 94 at 5.)  While these allegations and evidence do not prove the merits of Plaintiffs' claims, they do show that Plaintiffs raised legitimate environmental concerns.  They also indicate the existence of a significant public interest in obtaining a judicial determination regarding whether the Federal Defendants complied with NEPA before permitting commercial horse slaughter to resume.

---

[9] This included evidence of "blood spills, improper disposal of animal parts and carcasses, noxious odors, and the leeching of horse effluent into the local water supply and waterways.  These harms are compounded by the presence of chemical residues in equines [not] present in other amenable species subject to slaughter."  (Doc. 94 at 5.)

The Court also proposes to find that, as in *Sierra Club*, Plaintiffs "litigated in good faith," 848 F.2d at 1097, despite Valley Meat's and Responsible Transportation's suggestions to the contrary.[10] (*See, e.g.*, Doc. 100 at 136-37.)  That Plaintiffs oppose horse slaughter on principle does not mean that they sought to require the Federal Defendants to comply with NEPA in bad faith.  Notably, Plaintiff Humane Society of the United States ("HSUS") was previously successful in a lawsuit to require the FSIS to comply with NEPA before implementing fee-for-service inspections at commercial horse slaughter facilities, and thus had reason to believe that the FSIS may not have complied with NEPA in this instance as well.  *See Humane Soc'y of U.S. v. Johanns*, 520 F. Supp. 2d 8 (D.D.C. 2007).  Nor does HSUS's alleged participation and/or pecuniary interest in the development of a contraceptive for feral horses demonstrate bad faith. (Doc. 100 at 136-37.)  Given its general opposition to horse slaughter, HSUS' participation in the development of an alternative solution to the problem of horse overpopulation seems merely a rational, even responsible, course to take.  That Plaintiffs and the Intervenor-Defendants are on opposite sides of a highly controversial issue is clear, but again this does not mean that either side has litigated in bad faith.  Plaintiffs' professed desire to end horse slaughter, whether for humanitarian or environmental reasons, is no less valid than Valley Meat's and Responsible Transportation's professed desire to humanely and responsibly profit from it.

Finally, as in *Stephan*, 705 F.2d at 1270, the intervention of Congress has played a pivotal role in the outcome of this case, depriving Plaintiffs of an appellate ruling on the merits of their claims but at the same time vindicating their ultimate position.  Specifically, when

---

[10] That a plaintiff litigated in good faith is a necessary but not sufficient basis on which to conclude that the plaintiff should be relieved of the obligation to compensate a wrongfully enjoined defendant up to the limits of an injunction bond.  *State of Ala. ex rel. Siegelman*, 925 F.2d at 390; *see Adolph Coors Co. v. A & S Wholesalers, Inc.*, 561 F.2d 807, 814 (10th Cir. 1977) (wrongfully enjoined defendant need not show that plaintiff sought injunction maliciously to collect on injunction bond).

Congress defunded FSIS inspections for commercial horse slaughter for fiscal years 2014 and 2015, it rendered such slaughter unlawful, mooted Plaintiffs' appeal, and indicated a congressional policy decision that the costs of such slaughter outweighed the benefits. Thus, in all of the foregoing respects, this case is similar to cases in which the Tenth Circuit affirmed the trial court's decision to deny recovery on injunction bonds.

Other considerations of equity and justice peculiar to this case also mandate denial of recovery on the bonds. In this regard, perhaps the most critical factor is that Plaintiffs never asked for Valley Meat and Responsible Transportation to be restrained; rather, the Court restrained them *sua sponte.* The parties do not challenge the Court's authority to temporarily restrain a party on its own motion. (*See* Doc. 117 at 3-6; Doc. 121 at 8-10; Doc. 126 at 2-5); *see also Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1126 n.4 (10th Cir. 2010) (noting that the "district court issued its injunction *sua sponte* after considering the parties' dispositive motions and before any briefing on the question of an injunction"); *Phillips Co. v. Denver & Rio Grande W. R. Co.*, 46 F.3d 1151, 1995 WL 20415, at *2 (10th Cir. 1995) (unpublished) ("assuming arguendo" that the "district court had authority *sua sponte* to issue [a preliminary] injunction"); *cf. Baum v. Blue Moon Ventures, L.L.C.*, 513 F.3d 181, 188-89 (5th Cir. 2008) (district courts have authority to impose pre-filing injunctions *sua sponte*). Also, the parties agree that "[n]onfederal actors *may* . . . be enjoined under NEPA if their proposed action cannot proceed without the prior approval of a federal agency." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (emphasis added) (citations omitted); *Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1352, 1360-61 (S.D. Fla. 2005) (collecting cases); *Don't Ruin Our Park v. Stone*, 749 F. Supp. 1386, 1388 (M.D. Pa. 1990) (same)); (*see* Doc. 117 at 5-6;

Doc. 121 at 8-10; Doc. 126 at 3.)  In short, the Court had the authority to temporarily restrain Valley Meat and Responsible Transportation under NEPA on its own motion.

However, it would be inequitable to hold Plaintiffs financially responsible for the *sua sponte* TRO in the circumstances presented here.  The Court's *sua sponte* issuance of a TRO against Valley Meat and Responsible Transportation gave these parties standing to demand security under Rule 65(c).  *Ungar v. Arafat*, 634 F.3d 46, 52-53 (1st Cir. 2011); *Commonwealth of P.R. v. Price Comm'n*, 342 F. Supp. 1311, 1312-13 (D.P.R. 1972); *Powelton Civic Home Owners Ass'n v. Dep't of Hous. & Urban Dev.*, 284 F. Supp. 809, 815 (E.D. Pa. 1968).  Without the *sua sponte* TRO, Plaintiffs would not have been required to post injunction bonds in Valley Meat's or Responsible Transportation's favor.  (Doc. 102 at 1 ("[O]nly Responsible Transportation and Valley Meat have standing to seek injunction bonds as they are the only parties being restrained by the Court."); Doc. 199 at 1 ("Rains . . . does not have standing to seek an injunction bond because Rains . . . has not been enjoined.").)  The *sua sponte* TRO therefore adversely impacted Plaintiffs.

However, although Plaintiffs timely[11] filed a Motion to Modify and Objection seeking to have the *sua sponte* TRO lifted, Valley Meat and Responsible Transportation opposed the motion, and the Court did not have the opportunity to rule on it.  (Docs. 112, 117, 121.)  As such, though they acted with due diligence, Plaintiffs did not receive notice and an opportunity to be heard at a meaningful time on a legal ruling that adversely impacted them.[12]  Notice and an opportunity to be heard at a meaningful time are cornerstones of the American judicial system.

---

[11] Plaintiffs filed their Motion to Modify and Objection six days after they were ordered to post bonds, nine days after the TRO went into effect, and over two months before the TRO ultimately expired.

[12] The Court could, of course, rule on Plaintiffs' Motion to Modify now.  However, any meaningful time for the Court to decide the motion has passed.  The TRO Plaintiffs sought to modify has long since expired, and Plaintiffs have already been required to provide security for alleged damages to Valley Meat and Responsible Transportation that have already occurred.

*See Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) ("For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.") (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)); *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (party whose rights were affected by preliminary injunction had "fundamental" right to notice and opportunity to be heard at a meaningful time). As a matter of equity and justice, Plaintiffs should not now be made to pay nearly $500,000 for a TRO they opposed in the absence of these fundamental protections.[13]

A related equitable consideration concerns the voluntary, quasi-contractual nature of injunction bonds. An injunction bond "can . . . be seen as a contract in which the court and the applicant 'agree' to the bond amount as the 'price' of a wrongful injunction." *Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 805 n.9 (3d Cir. 1989)); *Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1033 (7th Cir. 2000) ("[P]osting a bond is voluntary. . . . If the bond is too high [the plaintiff] can drop the suit.") (internal quotation marks omitted). The Third Circuit described the process thus:

> When a court grants an applicant's request for a preliminary injunction, it will generally condition this grant on the applicant's posting a bond. The applicant then decides whether to accept the preliminary relief by posting the bond[,] or to withdraw its request. The applicant may base its decision on whether it wants to expose itself to liability up to the bond amount. If the preliminary injunction

---

[13] Valley Meat and Responsible Transportation, on the other hand, did receive the benefit of these fundamental protections. Specifically, they received prior notice and an opportunity to be heard on the TRO restraining the Federal Defendants, and actually argued in favor of maintaining the *sua sponte* TRO directly restraining them in opposing Plaintiffs' Motion to Modify and Objection. (Docs. 45, 46, 55, 100, 117, 121.) Notably, Valley Meat and Responsible Transportation could have agreed to have the TRO against them lifted nine days after it went into effect but made a tactical decision not to do so. Consequently, the *sua sponte* TRO against them remained in place until it expired.

takes effect and it is later determined a party was wrongfully enjoined, that party may then seek recovery against the posted bond. The recovery generally cannot exceed the amount posted.

*Sprint Commc'ns Co.,* 335 F.3d at 240.

Here, however, Plaintiffs' Motion to Modify and Objection demonstrate that they did not "agree" to "purchase" the *sua sponte* TRO at the price Judge Scott imposed, and posted the bonds, not "voluntarily," but rather to preserve the arguments raised in the motion and objection. (Doc. 112.) Without a ruling on the motion and objection, Plaintiffs did not know if the Court would modify the TRO or lower the amount of the injunction bonds, and so lacked sufficient information to decide whether to voluntarily accept the TRO or "drop the suit." *Mead Johnson & Co.*, 209 F.3d at 1033. For all of the above reasons, Plaintiffs should not, in equity and justice, be required to compensate Valley Meat and Responsible Transportation for their losses as a result of the *sua sponte* TRO up to the amount of the bonds.

The Court acknowledges that, as Valley Meat and Responsible Transportation argue, the TRO would have effectively prevented them from operating a commercial horse slaughterhouse even if it had not directly restrained them. (Doc. 117 at 2; Doc. 121 at 8-9.) However, two other Intervenor-Defendants, Rains and Chevaline, L.L.C. ("Chevaline")[14], were placed in exactly this position, *i.e.*, the TRO effectively prevented them from operating their businesses but did not directly restrain them.[15] (Doc. 168 at 2.) Judge Scott rejected these parties' demands for injunction bonds for lack of standing because they were not directly restrained. (Doc. 102 at 1-2;

---

[14] Chevaline's business was to procure horse slaughter contracts for Responsible Transportation and Rains, and to receive a commission of ten per cent of the profits from the contracts it procured. (Doc. 150 at 14-15.)

[15] Like Valley Meat, as discussed below, Rains admittedly did not have a groundwater discharge permit when the Court restrained the Federal Defendants from issuing a grant of inspection to it, but claimed that this would not have prevented it from operating. (Doc. 187 at 10; Doc. 193 at 3.) Also, in 2015, the Tenth Circuit noted the "recent development" that Rains "failed to successfully challenge a state permitting decision to allow only non-equine slaughter at the facility," *Front Range Equine Rescue*, 782 F.3d at 567-68, but neither Rains nor Plaintiffs contended that this would have prevented Rains from operating in 2013. (Docs. 180, 187, 193.)

Doc. 150 at 14-17, 82; Doc. 199 at 1.)  The Court's decision here properly places Valley Meat and Responsible Transportation on the same footing as Rains and Chevaline, indeed, the same footing as any private business negatively impacted, but not directly restrained, by a temporary restraining order against a federal agency.  It is worth noting that temporary injunctive relief against a federal agency has the potential to impact a multitude of private parties.  If courts directly restrained, and ordered Rule 65(c) security for, each of these private parties in every case, temporary injunctive relief against federal agencies would quickly become unworkable.

While Valley Meat and Responsible Transportation failed to profit from their investment in a controversial, high-risk, and ultimately evanescent business during the few months when it may otherwise have been permitted, the record is unclear regarding whether the Court's TRO alone was responsible for this situation.  Other circumstances, such as Valley Meat's lack of a groundwater discharge permit,[16] or the impending change in the law, may also have played a role.  (Doc. 150 at 49-50, 63, 77-78.)  The record is also unclear regarding whether Valley Meat's and Responsible Transportation's lost profits, even if proximately caused by the TRO, were as high as predicted.  These businesses had never engaged in commercial horse slaughter before; their projected profits were necessarily hypothetical, and never tested by discovery and meaningful cross-examination.  *St. Mary of the Plains Coll.*, 1989 WL 159368, at *4 ("The amount of damages must be proven to have been proximately caused by the injunction and may not be based upon speculation or conjecture.") (internal quotation marks omitted); *see also Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1264 (10th Cir. 1995) ("Although damages for lost business opportunities need not be supported by mathematical certainty, they

---

[16] The parties do not dispute the fact that Valley Meat never obtained a groundwater discharge permit for its horse slaughterhouse, but do dispute whether this would have prevented Valley Meat from lawfully slaughtering horses as of August 5, 2013.  (Doc. 150 at 78.)

must be based on reasonable proof.  Amounts that are speculative, remote, imaginary, or impossible of ascertainment are not recoverable.").  Nevertheless, even if the TRO alone was responsible for Valley Meat's and Responsible Transportation's inability to proceed with commercial horse slaughter as planned, and even if the damages it caused were as great as they claimed, the Court proposes to find that the more fundamental inequity would be to hold Plaintiffs financially responsible for a TRO that they did not seek, that they promptly opposed, and regarding which they could not be heard at a meaningful time.

## IV.  Conclusion

For all of the above reasons, the Court recommends that Responsible Transportation's Motion to Recover Injunction Bond (Doc. 213), and Valley Meat's Motion to Recover Rule 65(c) Security Bond (Doc. 215), be DENIED.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

Kirtan Khalsa
_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE